PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHAUNTEL JACKSON, | ) | CASE NO. 4:19-CV-1676 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| TRANSPORTATION SECURITY | ) | **MEMORANDUM OF OPINION** |
| ADMINISTRATION, | ) | **AND ORDER** |
| | ) | [Resolving ECF No. 2] |
| Defendant. | | |

Pending before the Court is the Complaint of *pro se* Plaintiff Chauntel Jackson against

the Transportation Security Administration ("TSA"). ECF No. 1. In the Complaint, Plaintiff

alleges she was terminated from her employment with TSA as a result of racial discrimination.

Plaintiff seeks monetary relief.

For the reasons that follow, this case is dismissed.

### I. Background

Plaintiff was hired to work for TSA in March 2013. ECF No. 1-1 at PageID #: 32

[Sealed]. She was assigned to the position of Travel Document Checker. Beginning in April

2015, Plaintiff committed a series of infractions that led to her dismissal.

On April 9, 2015, Plaintiff's supervisor asked her to help locate a toothbrush and lip balm

that were placed in the lost and found on February 5, 2015. ECF No. 1-1 at PageID #: 35.

Plaintiff contends she did not volunteer for this collateral duty. She indicated she was not sure if

she threw the items away after thirty days or if they were misplaced in the store room but her

supervisor "was on a quest to find out what happened to this toothbrush and lip balm." *Id*. She

states she and others with access to the store room were asked to write a statement concerning

these two items. Plaintiff then composed a letter to her supervisor resigning from collateral

duties. *Id*.

On April 10, 2015, Plaintiff allowed a female passenger to enter the security checkpoint

area without a valid boarding pass in her own name. *Id*. at PageID #: 33. The passenger

presented her husband's boarding pass to Plaintiff. Plaintiff did not adequately check the name

on the boarding pass with the name on the identification and allowed her to pass through. The

passenger's husband then arrived at the checkpoint a few minutes later and informed Plaintiff

that his wife possessed his boarding pass and he had hers. Plaintiff initially told her superiors

that she had discovered the error but her superiors later learned that the husband had alerted her

to the mistake. The supervisor issued a Letter of Guidance and Direction to Plaintiff, explaining

that the letter was not a disciplinary action and would not be placed in her personnel file. *Id*. at

PageID #: 33, 76. Instead, he would keep a copy of the letter for five years in the event that it

was needed for later disciplinary actions to show that she had been notified of the violation. He

also cautioned her against a lack of candor, particularly in security situations. *Id*. at PageID #:

77.

Another incident occurred on June 15, 2015 in which Plaintiff allowed an individual to

pass through the security checkpoint without properly confirming that the name on the boarding

pass matched the name on the identification. *Id*. at PageID #: 31, 38, 76, 78. On this occasion

2

(4:19CV1676)

she received a Letter of Reprimand, informing her that further misconduct could lead to more severe discipline, including termination from federal employment. *Id*. at PageID #: 38.

On September 6, 2015, Plaintiff spoke rudely to her supervisor. She indicates that her supervisor had been treating her disrespectfully for some time and had been particularly disrespectful to her in the briefing. She contends no one else intervened so she confronted the supervisor afterward by waving her finger and saying, "You know you was wrong for that briefing you gave." *Id*. at PageID#: 74. On October 8, 2015, she received a Letter of Counseling for this infraction informing her that her behavior was unacceptable and that she was required to act in a professional manner and treat others with dignity and respect. *Id*. at PageID#: 76.

A similar incident occurred with a passenger on October 11, 2015, just three days after receiving the Letter of Counseling. Plaintiff told a female passenger to "put her listening ears on." *Id*. at PageID#: 74. The passenger responded that Plaintiff did not need to talk to her that way and Plaintiff apologized. The passenger complained to Plaintiff's superiors. *Id*.

On October 22, 2015, Plaintiff allowed a former airport employee to gain access to a secure area of the airport with a deactivated employee badge. *Id*. at PageID #: 37, 71, 78. The badge was placed on the badge reader which indicated the badge was invalid. Plaintiff did not pay attention to the indication and admitted the individual to the secure area. When confronted with the error, Plaintiff said she initially saw green when she scanned the badge and then turned so she did not see the negative indication on the reader. *Id*. at PageID #: 72. She told her supervisors that she had not been trained on how to use the scanner and did not know how it

3

would react if the badge was disabled. Her supervisor determined she was trained on the scanner in 2013 and cited her lack of candor as well. *Id*. at PageID #: 72-78.

Plaintiff states that she was taken off of her regular checkpoint duties and assigned to the "exit" for two months. ECF No. 1 at PageID #: 3. She indicates this assignment made her feel isolated.

Because the disabled badge incident was Plaintiff's third security infraction in twelve months, TSA decided to remove her from her position as a TSA Officer and terminate her employment with the federal government on January 6, 2016. ECF No. 1-1 at PageID #: 71. Plaintiff appealed that decision to the Homeland Security Appellate Board. She alleges the Appellate Board reversed her termination and reinstated her to her employment. ECF No. 1 at PageID#: 2. She returned to work on April 14, 2016. ECF No. 1 at PageID #: 2. She states she resigned on April 20, 2016 because "the employee-employer relationship had been broken and because [she] had lost everything [she] owned because of TSA's actions against [her]." ECF No. 1 at PageID #: 2-3.

Plaintiff contends TSA treated her differently than it treated a Caucasian male who had failed to follow standard operating procedure at a security checkpoint. ECF No. 1 at PageID #: 3. She indicates Alin Deak had two infractions at the screening checkpoint. First, on November 8, 2015, he allowed a passenger to gain access to a flight from Cleveland to Los Angeles using a boarding pass with an incorrect date. Deak was removed from his screening duties until he was retrained. ECF No. 1-1 at PageID #:41-48. Second, on December 4, 2015, Deak subjected a passenger to a standard screening when standard operating procedure required a more thorough

security screening to be used. A supervisor noticed the mistake and screened the passenger more thoroughly before clearing him to enter the secure area. At the second offense, Deak expressed remorse for his mistake and presented an action plan to ensure such a breach would not occur in the future. *Id*. at PageID #: 42. He received a Letter of Reprimand in lieu of a three-day suspension. A Performance Improvement Plan was implemented for Deak on January 22, 2016. *Id*. at PageID #: 45. The Plan states that his performance has been unsatisfactory and he was placed in a probationary period for ninety days. He was told that it was expected that he would have no negative performance events during this period and if he did, he would face adverse personnel action, including removal from federal service. Deak was removed from the document check position and given the job of pushing bins through the x-ray machine. Plaintiff states that because Deak was not fired, he received more favorable treatment than her due to her race. ECF No. 1 at PageID #: 3.

## II. Standard for Dismissal

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). An action has no arguable basis in law when a defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. An action has no arguable factual basis when

(4:19CV1676)

the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199.

In determining whether Plaintiff has stated a claim upon which relief can be granted, the Court must construe the Complaint in the light most favorable to Plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough fact to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Although the Complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), further explains the "plausibility" requirement, stating that "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Furthermore, "the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III. Law and Analysis

6

(4:19CV1676)

As an initial matter, Plaintiff does not indicate what cause of action she is attempting to

assert. To the extent she is attempting to bring a *Bivens*[1] action, her claim must be dismissed.

*Bivens* provides a cause of action against individual officers acting under color of federal law

alleged to have acted unconstitutionally. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001).

It does not support an action against the United States government or any of its agencies. *See id*;

*see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484-86 (1994).

To the extent Plaintiff intends to assert a claim under Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e[2], *et seq*., she has failed to state a claim upon which relief may be

granted. Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any

individual, or otherwise to discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin." 42 U.S.C. § 2000e 2(a). The Court is aware that, at this stage, Plaintiff

is not required to plead her discrimination claim with heightened specificity. *See Swierkiewicz v.*

*Sorema N. A.*, 534 U.S. 506, 513-14 (2002). Nevertheless, Plaintiff must still provide enough

facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555; *Iqbal*, 556

U.S. at 678. The Sixth Circuit explored the scope of *Twombly* and *Iqbal* noting that "even

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[2] Title VII is the "exclusive remedy" available for federal employees claiming to have been
the victim of discriminatory or retaliatory acts by the government. *See Briggs v. Potter*, 463 F.3d
507, 517 (6th Cir. 2006); *see also Black v. Runyon*, 2000 WL 254669, at *7 (N.D. Ohio Jan. 4,
2000) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 829 (1976)). As Plaintiff alleges
she was an employee of TSA, a federal agency of the United States Department of Homeland
Security, the Court appropriately construes her claim under Title VII analysis.

7

(4:19CV1676)

though a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *New Albany Tractor v. Lousiville Tractor*, 650 F.3d 1046, 1051 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

Plaintiff's Complaint never rises above the speculative level. The Court is left to guess her race and why she believes race was a motivating factor in her dismissal. Nevertheless, construing the facts most favorably to Plaintiff, the Court proceeds to analyze the Complaint under the established framework for evaluating claims of race discrimination under Title VII the *McDonnell Douglas* burden shifting approach. *McDonnell Douglas*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Plaintiff must first allege facts to establish a prima facie case of race discrimination. Once Plaintiff has made such a showing, "the burden shifts to [Defendant] to articulate a legitimate, non-discriminatory reason for its decision." *Id*. at 802. To make a prima facie case, Plaintiff must show: (1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; (4) and that a similarly situated non-protected employee was treated more favorably than Plaintiff. *Gay v. Teleflex Auto.*, 2008 WL 896946, at *8 (N.D. Ohio Mar. 28, 2008) (citing *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995).

Assuming Plaintiff were able to meet the first three factors of the first prong of the *McDonnell Douglas* test, she fails to establish that a similarly situated non-protected employee was treated more favorably than she. Plaintiff grounds her entire discrimination claim in the disciplinary actions taken against her and those taken against Deak, a Caucasian employee, for

8

security-related infractions.  This, however, was Plaintiff's third security-related infraction in twelve months while it was only Deak's second security-related infraction.  Deak received a Letter of Reprimand and a warning that his employment could be terminated if he had any other incidents in the next three months.  Plaintiff had also received a Letter of Reprimand and a warning at her second infraction.  Based on those comparisons, it appears that both employees were treated similarly.  Furthermore, Plaintiff also had disciplinary actions taken against her for her lack of candor, and speaking rudely to a passenger and a supervisor.  There is no suggestion that Deak had other disciplinary actions taken against him or that he committed a number of other work-related infractions as Plaintiff did.  Simply put, Plaintiff has not alleged facts plausibly suggesting she was treated more harshly than her Caucasian coworker; nor has she alleged facts that race was a motivating factor in any disciplinary action taken against her.  Rather, she simply concludes that she was subjected to harassment, retaliation and racial discrimination.  The Court finds that Plaintiff fails to met the threshold burden of presenting a prima facie case of race discrimination and her allegations are not sufficient to cross the threshold of basic pleading requirements in federal court.  *See* Fed. R. Civ. P. 8 (providing a complaint must contain "a short and plain statement of the claim" made by "simple, concise, and direct" allegations.); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (finding legal conclusions alone are not sufficient to present a valid claim, and the district court is not required to accept unwarranted factual inferences).

Finally, even when the Court construes Plaintiff's claim as being brought under Title VII, Plaintiff to meet the prerequisites required bring this suit in federal court.  Title VII requires a

plaintiff alleging employment discrimination to file a timely charge of discrimination with the

Equal Employment Opportunity Commission ("EEOC") before bringing suit in federal court.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). When a charge of discrimination

is filed, the EEOC must investigate the complaint in order to determine whether there is

"reasonable cause to believe that the charge is true." 42 U.S.C. § 2000e-5(b). If the EEOC

determines that the complaint has a reasonable basis, it will issue a right-to-sue letter to the

plaintiff.[3] 29 C.F.R. § 1601.28(b). A plaintiff must then obtain a right-to-sue letter from the

EEOC in order to file suit under Title VII in federal court. *E.E.O.C. v. Frank's Nursery &*

*Crafts, Inc.*, 177 F.3d 448, 456 (6th Cir.1999); *see also Parry v. Mohawk Motors of Mich., Inc.*,

236 F.3d 299, 309 (6th Cir. 2000). Finally, Plaintiff has 90 days after receiving her right-to-sue

letter from the Equal Employment Opportunity Commission ("EEOC") to bring the action in

federal court. *Page v. Metro. Sewer Dist. of Louisville & Jefferson Cty.*, 84 F. App'x 583, 584

(6th Cir. 2003).

Plaintiff's last day of work with TSA was April 20, 2016. And she states the case was "in

EEOC proceedings until August of 2018." ECF No. 1 at PageID #:4. Nothing in the record

indicates that Plaintiff requested or received a right-to-sue letter from the EEOC  a "condition

precedent to filing an action in federal court." *Page,* at F. App'x 84 at 585. However, even if

Plaintiff were to have produced a right-to-sue letter at the filing this action, the Complaint would

be dismissed as untimely. *Id*. (finding plaintiff's complaint to be untimely where she failed to

---

[3] If the EEOC does not issue a right-to-sue letter within 180 days after the charge of
discrimination is filed, the plaintiff may request such a letter. 29 C.F.R. § 1601.28(a).

(4:19CV1676)

file the case in federal court within ninety days from receipt of an EEOC right-to-sue letter).

Plaintiff filed her Complaint on July 23, 2019, nearly one year from the conclusion of the EEOC

proceedings. Plaintiff has not presented the Court with evidence that equitable reasons exist to

excuse her failure to comply with the prerequisite to filing her lawsuit. Equitable tolling, waiver,

and estoppel are available only in "compelling circumstances which justify a departure from

established procedure." *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989) (affirming

district court dismissal where plaintiff did not present reason to justify the tolling requirements in

Title VII action). Accordingly, if construed as a Title VII claim, Plaintiff's action must be

dismissed.

### IV. Conclusion

Accordingly, Plaintiff's Application to Proceed *In Forma Pauperis* (ECF No. 2) is

granted and this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies,

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good

faith.

IT IS SO ORDERED.


 December 23, 2019             /s/ Benita Y. Pearson
Date                        Benita Y. Pearson
                            United States District Judge

11